Mr. John Thornton on behalf of John Doe's 1-7, the appellants. May it please the court. If this court affirms a decision that protects blocked assets of a bank used to finance terror from TRIA execution on the grounds that it lost its banking license and was cut off from its network, it will upend an entire body of law that has long allowed for TRIA execution against assets of entities made defunct or disabled by government actions, and it will create a circuit split in the process by directly contradicting the only circuit to address the question. Prominvest Bank's assets were blocked, and I quote Secretary Yellen, to quote, begin the process of dismantling the Kremlin's financial network and its ability to fund destabilizing activity in Ukraine and around the world. Our clients are victims of that destabilizing activity. I just wanted to ask you to first address the letter that came in a couple of days ago indicating passage of the law that recognized the nationalization of the bank, and I know you have other arguments, but with respect to that argument that a court should not rely on that because of the lack of any executive determination, in this case Congress as well, that argument, is that, dispose of that argument? Your Honor, the Repo Act allows for forfeiture of sovereign Russian assets, and if the administration finds that our allies are also doing the same, so it sets out a process, it shows the careful consideration by the political branches in how it acts when it comes to recognizing forfeiture of assets, and it didn't recognize seizures of non-sovereign assets, and it also is a careful policy that the U.S. not act in isolation, and I'd say that stands in stark contrast to the district court judge unilaterally deciding to recognize You said non-sovereign assets, but they're being blocked as Russian assets, right? But they aren't sovereign, they are second tier down, so under Dole and 1603 B2 Well under FSIA they're not sovereign assets, right, it's not an agency instrumentality, but there are different rules for blocking assets, right, these assets are being blocked because of ownership by the Russian government, right? They are, as I quoted from Secretary Yellen's statement, they're blocked due to ownership indirectly by Russia, but due to their participation in funding destabilizing activities around the world, so they're second tier, they're not sovereign Russian assets, they're non-sovereign assets. So your position would be that the Repo Act doesn't apply to these assets? That's correct. Because they're not Russian sovereign assets? Correct. Can I ask this question, if let's say it did apply, the Repo Act in addition to providing the statements of policy about compensating Ukraine also immobilizes Russian sovereign assets, so assuming that these are Russian sovereign assets how would that affect your case? It would mean that they can't be transferred to your clients anyway, right? Our clients, these assets were immobilized under the original blocking order, and our clients served a TRIA writ that then give them rights to these assets. A later action concerning the assets, which by the way, these aren't sovereign assets, and that action has not yet been taken because... No, no, I get that. So I understand there's this question about whether it's a sovereign asset. I mean, I do think it's a kind of weird result that it can be blocked because of its connection to Russia, but then the Repo Act wouldn't apply to it because it's not really a Russian asset. So I'm going to put that aside, and I'm just going to think about the implications for this case. If we were to conclude that the Repo Act applies, would that mean that your clients can't recover? Because the Repo Act says no Russian sovereign asset that is blocked or effectively immobilized by the Department of the Treasury may be released or immobilized, except it's otherwise authorized by this Act until the President certifies the war is over and so on. And what's authorized by the Act are transfers to Ukraine, right? Right, Your Honor. I think that would require... I guess my question is, does that mean that you can't recover? And does that affect the viability of the lawsuit? Our lawsuit precedes this. Our rights attached prior to this. If the court wants... If that were to happen and that arose... There's no written execution right now, right? I'm sorry? There's no written place right now, right? There's not a written place right now, Your Honor. So what would prevent right now those assets being transferred to... If the government actually attached them, then they would have the attachment. They don't have that attachment to get execution, number one. TRIA allows for attachment and execution or attachment. But also, we're asking this court to reverse so that they would be reinstated. Assuming we recognize... Even if we recognize the nationalization, your argument is that you should still prevail, correct? Well, at this point, Your Honor, I would say that the nationalization doesn't matter to what this court is considering. Can you give me one minute of why it doesn't matter? It doesn't matter because there hasn't been an attachment yet. It's a potential that might happen out there. It hasn't happened. This court should go forward with its business. And if it reverses, then we will collect on the assets before there's ever a government attachment. But their argument is that if we recognize the nationalization of the bank, that the assets then are no longer in the instrumentality. There's no longer an instrumentality. Well, that bank hasn't been nationalized. It's not going to reach these assets. These are non-sovereign assets. That act only concerns sovereign assets. So, it's not ever going to be, even within its terms, it's not ever going to be impacted, right? Well, you said that about the Repo Act, but I think Judge Bianco was asking about the Ukrainian nationalization. So, if we recognize the Ukrainian nationalization, and these are no longer Russian assets at all, meaning that it's not supporting the Taliban, and therefore it can't be an agency instrumentality, then it means you don't get a right of attachment or execution because it no longer meets the TRIA criteria. Your Honor, the I think your argument was that under Kirshenbaum, that you should still prevail under Proms 1 and 2 of Kirshenbaum, regardless of this issue. Correct. Is that your position? That is one of our two positions, and I'd like to state that there's another reason why Kirshenbaum doesn't stop us. And if it doesn't stop us, then what happened after the block doesn't matter. So, whether they simply say, put a receiver in place that did anything to take control of the assets, it doesn't matter. These are blocked assets in the United States that an overseas action can't reach, and the nature of them, of being blocked assets of an instrumentality of a terrorist, can't change. And I would say that the Kirshenbaum holding... It can't change because of the block, or because it supported the Taliban in the past, it always is recoverable regardless of the change in ownership later? It's both. It's blocked, so the actions in Ukraine can't touch it. Actions overseas can't touch it. And the nature of the instrumentality doesn't change, because once it... Well, the actions overseas might touch it, right? I mean, the If the government offers a license now, while there's not a writ, then that would be a different case, Your Honor. Right. So, if I just may... I just want to raise one thing about... Can I ask about that point that you have about the idea that if it supported the Taliban at any point in the past, it always is recoverable? I mean, it looks like a kind of sort of If you have a judgment against the Taliban in Texas, you domesticate it in New York because you've discovered property there, and then you bring another proceeding in order to enforce the judgment on those assets. Why wouldn't the relevant time be the ownership of the assets at the time you bring back that action? It's not, Your Honor, because that formulation stems from a present tense. They imported, essentially, the TRIA definition. I'm sorry, the Foreign Sovereign Immunities Act definition, which has a present tense definition of is owned by, whereas TRIA has a different formulation altogether, which is blocked assets have an instrumentality. And so that is... And then it's past tense. So TRIA says, notwithstanding any other provision of law, in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism or for which a terrorist party is not immune, the blocked assets of that terrorist party, including the blocked assets of any agency or instrumentality of that terrorist party, shall be subject to execution or attachment in aid of execution in order to satisfy such judgment. So why isn't the natural way to read that to say you have a judgment in the past, but if you discover new assets of the terrorist party, you can execute on them. But they have to be assets of the terrorist party at that time. Your Honor, they're blocked assets of an instrumentality of the terrorist party. And an instrumentality is defined in the past tense under Kirschenbaum itself. It was a means through which... Although that's a judicial opinion. We don't always read judicial opinions the way we read a statute. But I'm just asking sort of why that would make sense. If I have a judgment in another state and I domesticate it somewhere because I've discovered property of the judgment debtor in that state, I don't get to execute the judgment on that property if the judgment debtor ever owned the property in the past. It has to be at the time that I'm executing the judgment, right? So if the defendant in my case sold a house to a bona fide purchaser for value, I'm not going to be able to execute my judgment on it because he's not the owner of it at that time. Your Honor, I would submit that that reading, the natural reading of this statute, blocked assets of any instrumentality would include assets that were blocked when that entity was an instrumentality. You wouldn't get away with saying I'm not an adulterer because the person I slept with got a divorce afterwards. You don't look at the status of after the fact. You look at the situation when it I would say that this has not been questioned through the entire history of TRIA executions, which are always against shuttered entities that are no longer operating. They don't come in and argue. I apologize. The Department of Justice in other cases has suggested some things along the line of judgment. I understand your argument regarding person bound and person bound seems to be broader than just looking at ownership at the time of the writ. For example, in the proceeding in the Southern District where they cite this footnote 9, the Department of Justice said permitting a foreign state's assets to be attached indirectly to satisfy the judgment against a non-state terrorist organization would supplant the discretion that Congress afforded to the executive branch and designating state sponsors of terrorism. And then in the Caballero case, along the lines of what Judge Manasci suggested, although they didn't take a position on this, they did note that TRIA has consistently read authorized attachment execution only of blocked assets that are owned by the party against whom attachment is sought, as opposed to authorizing attachment based on some narrower view than you have of what TRIA allows. The Department of Justice hasn't come in this case, and I don't think that this case is one. I think that was perhaps a case that- Why shouldn't we ask them? Given the unusual circumstance, we have the nationalization of a bank. The assets were blocked for a different reason than you're seeking them for. They were blocked related to Russia's activity with Ukraine. There's two things going on. It's a pretty unusual situation, isn't it? What's different than the footnote that you're citing is that these are not Russian sovereign assets to start with. They're not sovereign assets. Ukraine now is claiming that it has made them its sovereign assets, and respectfully, through a nationalization- Did the United States block them as Russian assets? Isn't that how they were blocked? They were not blocked as sovereign Russian assets, Your Honor. They were blocked just like many oligarchs' assets were blocked. I don't know that the Department of Justice would make that distinction that you're making. They weren't sovereign assets. They were just blocked as Russian assets. I don't believe the Department of Justice has taken the position that- Is there any reason we shouldn't ask them? Is there any reason we shouldn't ask them if they want to weigh in on this case? I would say it's not necessary because this is a second tier and it's clear. I'm not going to stop the court if it wants more guidance, but I would say it's not necessary because these assets don't fall under sovereign assets to start with. The OFAC regulations say- OFAC has this 50% rule, right? They have an interest in all property, an interest in property of entity in which such persons directly or indirectly own, whether individually or in the aggregate, a 50% or greater interest. So anyway, OFAC's rules about blocking assets involve direct ownership or indirect ownership, right? And I understand your point about the FSIA that sets aside indirect ownership as not being an agency or a utility of the state. So we have these two definitions. One, the blocking regulations that block it even if it's indirect ownership, and the FSIA that puts aside indirect ownership. If the Repo Act is talking about blocked assets, why wouldn't it make more sense to follow the blocking regulations and their understanding of what are sovereign assets as opposed to the FSIA definition? Well, the blocks are simply saying what is blocked. They're not saying what is sovereign, right? Entities and collections happen all the time against these second tier entities. I've been involved in one of them. So this isn't- So you're saying that the assets here are blocked not because of ownership by the state of Russia, but for some other reason? Prime Invest Bank was specifically named as a blocked entity. So it was named as a blocked entity surely because it's part of the Russian financial network. But our experts showed that there are two Russian sovereign banks that have a number of non-sovereign identities, which for this court to extend to Russia sovereign status to assets that it has essentially moved off its state books so that it can do nefarious things would be I think a perversion of the idea of what's going on here. Can I ask a question about Kirshenbaum actually? It seems like this is not disputed in the case, but isn't it sort of strange if Russia is providing assistance to the Taliban to think of the Russian bank as an agency instrumentality of the Taliban? If Russia is providing aid to a terrorist group for its own reasons, the terrorist group might be dependent on Russia and therefore might be an agency instrumentality of Russia. But it's sort of weird to say that because there's a bank through which a bigger entity provides resources to a smaller entity that the bigger entity is instrumentality of the smaller one. Do you see what I'm saying? I do see what you're saying, but when these networks come into existence it's different than the FSIA concept, which is just essentially top down. It is a means through which a material function of the terrorist party is accomplished and the Taliban accomplished being funded through this entity. And if I may say, or provided material services to, which is essentially laundered money so that Russia could give them money. But isn't it weird that if Russia for its own foreign policy reasons is providing assistance to the Taliban, I understand it's providing material services to it, but it's still strange to think of Russia as an instrumentality of the Taliban. Think about it the other way. But the Taliban is getting what it wants in Afghanistan. It wants money to fight the Americans. And it needs a way to get that. So how does it do it? It goes to the Russian financial network. So that Russian financial network then is its instrumentality. Good morning. May it please the Court. I will start with the question that you asked Judge Bianco, which is how does the Repo Act affect the decision in this case? And we would submit that since the Repo Act it has become absolutely clear that it is the policy of the United States government as expressed by the Congress and by the President who signed it, that the nationalization of Russian assets to compensate Ukraine is the policy of the United States and the law of the United States. It's a little more complicated than that because the policy of the United States is that the compensation to Ukraine through Russian assets should take place through a multilateral process and so on, right? Is that consistent with recognizing the nationalization necessarily? So the sense of Congress, which is expressed in the statute, specifically says that the aggression by Russia gives legal authority to the United States government and other countries to confiscate Russian sovereign assets in their respective jurisdictions. So under Republic of Iraq, the question before this Court is, is the nationalization of Prominvest Bank by Ukraine, which was for the purpose of compensating Ukraine for Russian aggression, is that consistent with the policy and law of the United States? And I submit to you that there is no question about that after the Repo Act. It doesn't matter. Their argument is even if that was all true, they should still prevail for a couple of reasons. The first is, as you know, they argue that the actual ownership did not transfer. Nothing happened. Not nothing happened, but it was a liquidation. Laws passed, but at the time they filed the rep, there wasn't transfer of ownership. But apart from that, as you heard today and was in their briefs, they argue under our analysis in Kirshenbaum, under 1 and 2, they should still prevail because the bank was funding the Taliban, providing material support, and that they should still prevail regardless of the ownership interest. So what's your response to that? The response, Your Honor, is that it has been the law of not only this circuit but the Supreme Court for a very long time that the moment you measure agency or instrumentality is the moment that you file the complaint seeking to attach those assets. Those cases, they point out, focus on the ownership issue, not on the issue of whether or not there was a means through which material function of the terrorist party was accomplished or material services were provided. Because their argument is by definition if the assets have been seized and taken over by law enforcement or the government, that would never be ongoing at that point. They would never be able to satisfy that because if we have control of the assets or someone has control of the entity, they would always lose on those problems. Yes, Judge Bianco, if the entity is no longer an instrumentality of the terrorist organization, then there is no jurisdiction under TRIA to attach the assets. And it may be a complicated factual analysis. Why did we say that? If you look at the Kirshenbaum language, I understand what the statutory language is, but what qualifies an agent or instrumentality under TRIA? Yes, Your Honor. There are two prongs that are based not on ownership but on material assistance, etc. But it still has to be the case that at the time of the attachment, the entity is an instrumentality. You can look back. What does that mean? So let's say there wasn't a change in ownership of the bank here. There's no nationalization or anything. It's just that at the time they got their first judgment, the bank was providing material assistance to the Taliban. But then when they sought to execute in the Northern District of New York, the bank says, oh, well, we stopped those payments yesterday. And so we're no longer providing material support. Would that mean that they could not recover under TRIA? Because at that moment they're not providing material services? No, I don't think so, Your Honor. I think a court would be required to conduct a factual analysis as to whether the entity was still an instrumentality. And I think simply saying that you're no longer helping is not going to be enough. Let me just say it. They said they genuinely did it. They stopped the day before the motion for execution. It actually did stop. I think that would be a difficult case. I think this is an easy case because this is a case where the instrumentality is no longer owned by or controlled by Russian government. And there's no dispute about that. The argument with respect to Proms 1 and 2 is essentially that the assets of the bank are tainted assets because they were used to fund the terrorist organization. The victims of terrorism should have access to those assets under TRIA even if, for whatever reason, the bank is no longer able to do that. If the U.S. government seizes the bank's assets and it goes bankrupt so it can't continue to provide money to the Taliban, under your reading of this, they would not be able to recover simply because the bank stopped operating at the moment they filed the writ. They could no longer recover assets if it's no longer an instrumentality. Does that make any sense? If the U.S. government seizes the assets, the bank goes under, the day after that happens, they file a writ of execution under TRIA saying they've been funding the Taliban for years, people died as a result of that, we have a judgment, we want to recover. Your answer to that question would be sorry. As of today, they're not an instrumentality anymore. You lose. I would say that the government of Ukraine has an overriding public policy to compensate Ukrainians with blocked assets that were blocked because of the Russian aggression. So yes, I would say that the Ukraine government wins in that instance. I'm just asking you a broader question about the interpretation of the statute. The question about the Ukrainian government can depend upon whether or not they were through the courthouse doors first before this happened with respect to the Ukrainian government, right? Yes, Your Honor. I don't take the position that you have to base instrumentality on only what happened on a Tuesday when the attachment order occurred on a Wednesday. I think you can look back and ask the question, was this entity being used as an instrumentality of a terrorist organization? And that requires a factual analysis. But if the factual analysis results in a conclusion that it was in the past an instrumentality and it no longer is, then it's not an instrumentality that can be executed again. So I would use it as an example, the government of Afghanistan. The government of Afghanistan before 2000 was controlled by the Taliban, and then it was taken over by a democratic government, which was no longer assisting Russia and was against Russia and was not supporting the Taliban. So that's fair. So you're saying that it has to be at the time of the execution, and there might be some difficulty in deciding whether it's instrumentality at the time of the execution. And maybe it's an easier case when there's some very clear reason why it wouldn't be because of a change in ownership. If it's a case where they've sort of stopped providing material support, then courts have to do a kind of analysis to determine whether it's a bona fide change or it's a fake or strategic change or something to that effect. Yes, Your Honor. And the reason why you think we have to look at the time of the execution is why? Is it what I was saying earlier that it's like an analogy to executing on a judgment, like an in rem proceeding? It is that, and it is also because the existence of an instrumentality is a jurisdictional requirement under TRIA and jurisdictional requirements are assessed at the time of the requirement. But it just says you can execute. You can execute on the blocked assets of a terrorist party, including the blocked assets of the agents of instrumentality, shall be subject to execution or attachment. Why do you say that's jurisdictional? In order to have... If I sought a writ of execution against assets that turned out to be not the blocked assets of an agent's instrumentality, I would fail to state a claim, right? It's not that there'd be no jurisdiction over the case. Right? If I allege that certain assets are subject to writ of execution, I might just be wrong, right? That doesn't mean that there's no jurisdiction over it. I'm kind of puzzled by that argument. In order to have an exception to FSIA, it is necessary to establish that... The FSIA would point out wouldn't apply here because of Dole and there's not a direct ownership of the bank by Russia. So I'm not sure why FSIA applies at all here. Well, there needs to be an exception to the FSIA immunity in order to bring an attachment proceeding. And that exception to immunity in the case of TRIA is the existence of an instrumentality or agency of government. Yeah, but this doesn't speak in terms of jurisdiction. You know, the blocked assets... A terrorist party is not always going to have sovereign immunity, right? It's only in a pretty idiosyncratic circumstance where there's a sovereign that is an agent's instrumentality of a terrorist party. That is true, Your Honor. Okay, so your argument is that about the exception to FSIA. I'm not sure that's right, but we have the other point. Can I ask you about what I asked opposing counsel? You don't seem to be contesting this, but isn't it very strange to think of Russia as an agency's instrumentality of the Taliban? Yes, Your Honor. We have not conceded that Russia is an instrumentality of the Taliban. Evidence was put in through an expert declaration, which may or may not establish that. I would point out... But let me just ask you about the scope of Kirshenbaum. I mean, I understand Kirshenbaum says we're going to interpret agency's instrumentality broadly, and part of it is, you know, entities that provide material services. But if Russia, for its own foreign policy reasons, is providing assistance to a terrorist entity, it's very weird to think that Russia is an instrumentality of the terrorist entity. If anything, you think it's the opposite. Like a terrorist entity that's dependent on aid from Russia is an instrumentality of Russia that it's using to execute its foreign policy or so on. So does that mean we're reading Kirshenbaum wrong? Or is that not a good interpretation? Or is that just what Kirshenbaum says, and we're stuck with that as a matter of precedent, I guess is my question. Kirshenbaum does say that if an entity is providing material assistance to a terrorist, it can be an instrumentality. It can be, but maybe we should understand that in light of the phrase we're interpreting, which is agency's instrumentality, right? So is there some kind of more limited understanding of what that prong of Kirshenbaum means? Yes, I mean, I've never seen a situation where an entire government is deemed an instrumentality of a terrorist organization. I'm not saying it can't happen, but it doesn't seem to fit the language. But here the focus is on the bank, though. Obviously Russia has indirect ownership of the bank. But the focus is that the bank is funneling money to the Taliban, right? That's not so unusual, right? That the bank is an instrumentality of the Taliban because it's funneling money and supporting their activity, right? That's the allegation. We do not accept that. Let me ask you this. Why shouldn't we ask the Department of Justice to see if they want to weigh in? They have filed a statement of interest in other cases. They haven't done so in the district court here. But is there any reason we should see whether they want to weigh in, especially in light of the Repo Act and how that may implicate this case? I leave that to the court, but I would point out that I don't believe the issue before this court is whether the Repo Act applies to these assets. The reason for that is that I think what is before this court is the question of whether the nationalization of PromInvest Bank is consistent with the policy of the United States. I think that question is easily answered by reading the Repo Act. I get that, but doesn't the Repo Act have some implications for whether this case is still alive? So if they are Russian sovereign assets, doesn't the Repo Act say that they can't be transferred? Meaning that the plaintiffs here can't recover them in any event? That may well be the case. So might that make the case moot if it's impossible for the district court to provide this relief? That would make the case moot. So do you have a position on that question? Are these Russian sovereign assets? And does the Repo Act prevent their transfer to the plaintiffs? I read the definition of Russian sovereign assets more broadly than my colleague. That definition is in Section 6, Section 2, Paragraph 6, which defines Russian sovereign assets as the funds or property of Russia or Right. So I read that to include assets that are much broader than what might be called sovereign entities under the FSIA, which is limited to just the first level. But this does not appear to me to be limited to the first level. But I think my view is that whether or not, in the end, the government determines that these assets are subject to the Repo Act is not critical to my position here. But this might prevent, mean that the case is not live. It would moot the case, but I win anyway. First I want to address the source of the rule that the instrumentality status is at the time of filing of the complaint. That rule doesn't apply in this case. That rule comes from the Foreign Sovereign Immunities Act, which is not at issue in this case at all. They cite on page 19 in their brief. Yeah, I think you were getting that I was skeptical of the idea that it's a jurisdictional question. So putting that aside, is it just a natural way to read TRIA to say, well, you have a prior judgment against a terrorist entity, and you discover assets of it somewhere else. And then you go and try to execute the judgment on that. I mean, just intuitively, we would think that it has to be assets of the judgment debtor at the time that you're seeking to execute the judgment. Why is that intuition wrong? Well, it's the judgment debtor or an instrumentality of the judgment debtor, and these are assets of an instrumentality. Right, but you don't have to have active, for all the reasons we said already today, you don't have to have active participation in the scheme. You don't have to be an instrumentality at that moment. And I laid out my brief one distinction between an ownership situation and the first two Kirshenbaum factors, which are more active, but I want to just take a second and talk about how that was really just dicta in Kirshenbaum, when it said that questions of fact exist as to whether a lobby was so owned, controlled, or directed at the time the plaintiff's complaints were filed. And, you know, the Eleventh Circuit looked at this exact, exact case. It involved a money launderer for Venezuela, and Venezuela was aiding the FARC. Here we've got a money launderer for Russia, Russia's aiding the Taliban. And the exact same argument was made, and this exact dicta from Kirshenbaum was cited. We saw that in the papers. Okay, well, let me just, you know, the reason, something that was not so stressed in the papers, is that the reason the court said that was because in a lobby we had a very particular situation where the assets weren't blocked, except for by operation of law, by the blocking order, because this was the Shah's former foundation that wasn't blocked, wasn't sequestered, unless it was owned by Iran. So in that case, the jurisdictional fact that we're talking about, that you have a blocked asset at the time of the filing, was only satisfied if Iran was owned at that time. So that's how it came out with that. And the rule for- We got it, Mr. Thornton. Well, just the jurisdictional fact- We're done. Okay, thanks. We've had plenty of time. All right, thank you so much. Thank you for a reserved decision. Have a good day. Thanks. Thank you.